IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael Sarratt, | ) C.A. No. 2:09-CV-0541-HFF-RSC |
| Plaintiff, | ) |
| -versus- | ) **REPORT AND RECOMMENDATION** |
| S.C.D.C., Jon E. Ozmint, Tim Riley, David McCall, and Amy Enloe, | ) |
| Defendants. | ) |

This civil rights action brought pursuant to 42 U.S.C. § 1983 (2003)[1] by Michael Sarratt, a prisoner proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' motion for summary judgement. 28 U.S.C. § 636(b).

---

[1] Section 1983, titled a civil action for deprivation of rights, reads in relevant portion:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

On March 4, 2009, the plaintiff brought suit in the United States District Court for the District of South Carolina against multiple employees of the South Carolina Department of Corrections ("SCDC"),[2] including Jon E. Ozmint, the Director of the SCDC, Tim Riley, the warden of Tyger River Correctional Institution a facility of the SCDC, David McCall, the warden of Perry Correctional Institution a facility of the SCDC, and Amy Enloe, a nurse practitioner at PCI. The plaintiff alleged violations of his Eighth Amendment protection from cruel and unusual punishment from unsanitary conditions of confinement, and deliberate indifference to serious medical needs. He seeks sixty thousand dollars in damages.

On August 3, 2009, the defendants filed a motion for summary judgment with various affidavits and exhibits. The plaintiff was provided a copy of the defendants' summary judgment motion, affidavits, and exhibits, and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed an opposition with unverified exhibits to the defendant's motion on September 29,

---

[2] SCDC was dismissed without prejudice from the action on April 13, 2009, by the Honorable Henry F. Floyd, United States District Judge.

2009. Hence it appears consideration of the motion is appropriate.

## **SUMMARY JUDGEMENT STANDARD**

The burden on summary judgment is on the defendant, as the moving party, to demonstrate the absence of any genuine issues of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The facts themselves, and the inferences to be drawn therefrom, must be viewed in the light most favorable to the plaintiff, as the party opposing the motion. United States v. Diebold, 369 U.S. 654, 655 (1962); Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 473 (1962).

In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the genuineness and materiality of any purported factual issues. Though the burden of proof rests initially with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon the bald assertions of his pleadings. Fed. R. Civ. P. 56(e). See First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968).

Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial exists to resolve what reasonable minds would recognize as real factual

disputes. See Cole v. Cole, 633 F.2d 1083, 1089 (4th Cir. 1980); Atl. States Constr. Co. v. Robert E. Lee & Co., 406 F.2d 827, 829 (4th Cir. 1969).

**FACTS**

The facts, either undisputed or taken in the light most favorable to the plaintiff as the nonmoving party, and all reasonable inferences therefrom, to the extent supported by the record, are as follows.

First, Plaintiff filed a verified complaint which must be taken as true for summary judgment purposes. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). In his complaint he indicated that he was incarcerated at Perry Correctional Institution ("PCI") and housed in the Special Management Unit ("SMU") from June 25, 2008, until October 6, 2008. Warden Riley was the acting warden of PCI between July 23, 2008, and August 6, 2008, and the plaintiff alleged that during that time he was denied "access to take a shower, have his bed or personal linen washed, access to cleaning materials to clean his cell/living area or access to outside recreation." Complaint Section IV. On August 23, 2008, the plaintiff alleged that he "noticed a condition on his left leg that he suspected was a staph infection/MRSA[3]" and requested medical assistance for the condition on that day and

---

[3] MRSA is the abbreviation for methicillin-resistant Staphylococcus aureus.

4

the next. However, the plaintiff stated that he was "neglected assistance." Id. Nonetheless, the plaintiff admitted that he received medical attention for the condition on August 26 and 27, 2008. He stated that he was prescribed an antibiotic by Defendant Nurse Enloe and placed on the list to see a physician. He also was provided with pain medication on August 27, 2008, by Enloe. Id.

Plaintiff alleged that he continued to seek medical attention from August 28, 2008, to September 24, 2008, but did not receive a response or any assistance. Plaintiff did not indicate that he made these requests to Nurse Enloe. Plaintiff stated that he sent numerous "Inmate Request Forms" to Warden McCall and Director Ozmint complaining of the unsanitary conditions and medical neglect but, he received no proper response.

Thus, the plaintiff alleged that he endured severe pain and suffering and has scars on his body. He further claims that as a result of the stress caused by the medical neglect and conditions, he has had to seek mental health counseling. The plaintiff also complains that the infection caused him to "begin his fast for Ramadan in the state of impurity."

The plaintiff's undisputed medical records from June 18, 2007, through March 24, 2009, indicate that Nurse Enloe's first encounter with the plaintiff was on August 24, 2008, for

5

complaints a "swollen place on his leg" and a "spot on his right forefinger." He was given a ten days supply of antibiotics Septra and Rafampin and Percogesic for pain. Hydrocortisone was applied to the areas and "they were covered with gauze dressing and tape."(Aff. Enloe). He was seen again the next day, was provided additional dressing supplies, given a three day supply of Ultram for pain, told to continue taking antibiotics given to him the previous day, and to keep his leg elevated. On August 29, 2008, Plaintiff requested and was given additional dressing supplies by Nurse Hoehing. Although he was seen several other times after that date for other unrelated problems before his transfer out of PCI, there is no record of any continuing complaint about his skin condition.

## DISCUSSION

A review of the record and relevant case law reveals that the defendants' motion for summary judgment should be granted.

Construing the pro se complaint liberally, it appears that the plaintiff seeks to impose vicarious liability on Director Ozmint, Warden Riley, and Warden McCall. In his sworn complaint, the plaintiff asserts that PCI was unsanitary, that he was not allowed to go outside for recreation, that he contracted a staph infection, that he was denied medical treatment for the infection, and that as a result he could not be in a state of purity for the beginning of the observance of Ramadan as required

6

by Islamic law. He claims that Ozmint, Riley, and McCall are legally responsible for everything that occurs at PCI.

The plaintiff makes no specific factual allegations whatsoever against Ozmint, Riley, and McCall. At best, the plaintiff may claim that Ozmint, Riley, and McCall are liable as a result of their supervisory positions, not as a result of any specific action which they took personally which caused him to suffer an injury of constitutional magnitude. The defendants argue that the action should be dismissed as supervisory liability does not apply to this case. They are correct.

The doctrine of respondeat superior generally is inapplicable to § 1983 suits. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a unreasonable risk of constitutional injury to the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).

Here, the plaintiff has failed to allege any facts supporting such a claim against Ozmint, Riley, or McCall. Although the plaintiff alleged he sent "Requests to Staff" to these supervisors, liability cannot be premised on so thin a thread. Plaintiff failed to allege that these defendants actually received the requests, read them, and, as a result, understood that there was a risk of constitutional injury. Additionally, he has not shown that Ozmint, Riley, and McCall demonstrated deliberate indifference to that risk, or that their actions were causally related to any injury allegedly suffered by him. These defendants cannot be held liable for the allegedly unconstitutional acts of others without specific wrongdoing by themselves personally. Therefore, the plaintiff's claims based upon a theory of vicarious liability should be dismissed.

Next, it may be that Plaintiff seeks to impose liability on Nurse Enloe based on his claim that he did not receive adequate medical care for his skin condition. To the extent that he sued Enloe for events which occurred after August 27, 2008, when Enloe last treated the plaintiff, he fails to allege sufficient personal involvement on her part to give rise to liability.

Further, the plaintiff's claims fail to state a cognizable § 1983 claim. Here the plaintiff claims the defendants violated his constitutional right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment of the United

8

States Constitution. <u>See</u>, U.S. Const. Amend. VIII. A prisoner makes out a claim under the Eighth Amendment if he can establish that the prison personnel responsible for his care were deliberately indifferent to his serious needs. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976); <u>Amos v. Maryland Dep't of Pub. Safety & Correctional Servs.</u>, 126 F.3d 589, 610 (4th Cir. 1997), vacated in part on other grounds, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998). These requirements go beyond a showing of negligence, and require Plaintiff to establish the defendants acted with an indifference as would "offend evolving standards of decency." <u>Id.</u> "[E]xtreme deprivations are required to make out a conditions-of-confinement claim... . Since routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1380 n. 3 (4th Cir. 1993) (internal quotations omitted). In addition, "to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." <u>Id.</u> at 1381; <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995). To be actionable, there must be an "extraordinary case of a palpable deprivation of the minimal requirements of civilized existence in which an inference

9

of serious injury might be reasonable." Strickler, 989 F.2d at 1382.

In the medical context, a plaintiff must show that the prison medical personnel responsible for his care were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 610 (4th Cir. 1997), vacated in part on other grounds, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

In Estelle v. Gamble, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Id. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Likewise, constitutionally, the state is not required to furnish prisoners the best of care, only reasonable care. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). The Constitution also does not guarantee a prisoner the treatment of his choice. Jackson v. Fair, 846 F.2d 811 (1st Cir. 1988).

The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is

involved, is insufficient to support a claim under § 1983. Sosabee v. Murphy, 797 F.2d 179 (4th Cir. 1986). Even if plaintiff could establish negligence in his medical treatment, Section 1983 does not provide for a remedy. Only violations which rise to the level of an unconstitutional deprivation are actionable under Section 1983. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, supra. Negligence simply is not actionable under 42 U.S.C. § 1983. Daniels v. Williams, 474 U.S. 327 (1986).

Plaintiff alleged that he was not allowed adequate showers which subjected him to unsanitary conditions violating his right to be free from cruel and unusual punishment. However, bathing opportunities may be severely reduced without violating a prisoner's constitutional rights. See, e.g., Shakka v. Smith, 71 F.3d 162, (4th Cir. 1995) (holding that even though plaintiff was not given a shower for three days after having human feces thrown on him, his constitutional rights were not violated because he had access to water with which to clean himself); Davenport v. DeRobertis, 844 F.2d 1310, 1316-17 (7th Cir. 1988), cert. denied, 488 U.S. 908 (1988) (holding that allowing inmates only one shower per week did not violate constitutional rights); Blackburn v. South Carolina, 2009 WL 63254 (D.S.C. 2009)(ten days without a shower was not a constitutional deprivation).

Here, the facts are not sufficiently distinguishable from the facts of <u>Blackburn</u>, <u>Davenport</u>, or <u>Shakka</u>. The defendants are entitled to judgment as a matter of law.

Likewise, Plaintiff's allegation that his constitutional rights were violated when he was denied access to cleaning supplies fails. Plaintiff's claims are not sufficient to establish that he was deprived of the minimal civilized measures of human necessities in such a palpable way that injury should be inferred, nor has he come forward with sufficient evidence that he has sustained any serious or significant physical or emotional injury as a result of the conditions at issue.

In his Complaint, Plaintiff attempts to suggest a causal link between the skin condition[4] he discovered and the conditions of confinement he alleges were unsanitary. However, his attempt fails because Plaintiff is not a medical care provider and the affidavit of Defendant Enloe demonstrates that Plaintiff's skin condition could not be considered serious as it was treated and resolved in a matter of days. This claim should fail.

The plaintiff also alleged that his rights were violated in that he was denied access to outside recreation between July 23,

---

[4] A review of the plaintiff's medical records reveal that his skin condition was never diagnosed as a staph or MRSA infection. Plaintiff merely opined that it was "a possible staph infection." and admitted that "there is no possible way to verify what was actually wrong with the plaintiff." (Complaint pgs. 2, 4).

2008, and August 6, 2008. The Fourth Circuit has held that in order to sustain a § 1983 claim for lack of exercise, a plaintiff must produce evidence "that he has sustained a serious or significant physical or emotional injury as a result of these conditions." Strickler, 989 F.2d at 1381. Furthermore, the Fourth Circuit has distinguished exercise from recreation. Id. at 1381 n. 7 ("We . . . consider whether [the plaintiff] was denied exercise. Notably, however,. . . [the plaintiff] does not even specifically allege that he was deprived of such a right but instead claimed he was being denied 'adequate recreation.'").

"Lack of exercise may rise to a constitutional violation in certain limited circumstances 'where movement is denied and muscles are allowed to atrophy [and] the health of the individual is threatened.'" Thomas v. Ramos, 130 F.3d 754, 763 (7th Cir. 1997) (quoting French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985)). Courts have held that there is no need to provide opportunities for exercise outside of one's cell if a person is capable of performing exercise within his or her cell. Id. at 764 (holding no constitutional violation had occurred when inmate was confined to his cell without exercise for seventy days but could have conducted exercises such as push-ups, sit-ups, and jogging in place within his cell); see also Clay v. Miller, 626 F.2d 345 (4th Cir. 1980) (holding that there was no constitutional violation when inmates have access to an indoor day room for

eighteen hours per day and are encouraged to use the room for exercise). This claim should fail.

Plaintiff's claim against Nurse Enloe fares no better. Plaintiff has not shown that she was deliberately indifferent to a serious medical need. Nurse Enloe avers that Plaintiff's medical records indicate he was evaluated on August 24, 2008, for complaints of a "swollen place on his leg" and a "spot on his right forefinger." Aff. of Enloe, at ¶ 5, Def. Ex. 2). The computerized summary of Plaintiff's medical records attached to Defendant Enloe's affidavit indicate that Plaintiff was given Benedryl, hydrocortisone cream was applied to the areas at issue, and they were covered with gauze dressing and tape. Id. Plaintiff's medical records further indicate that he received follow up treatment on August 26, 2008, and was issued antibiotics. Id., at ¶ 6. Plaintiff was seen again on August 27, 2008, and was issued additional dressing supplies and pain medication. Id., at ¶ 7. On August 29, 2008, Plaintiff was seen again by medical staff and he was issued additional dressing supplies. Id., at ¶ 8. Plaintiff's medical records reflect that he did not report again to the medical department with complaints about the skin condition. Id.

On these facts it appears that Plaintiff has failed to establish a deliberate indifference to this medical condition. Estelle, 429 U.S. 97, 104-05 (1976). He was repeatedly examined

by the defendant and received drugs and dressings several times. Enloe provided constitutionally adequate treatment to the plaintiff. She did not see Plaintiff after August 29, 2008, for his skin condition and she cannot be liable for any alleged constitutional delicts which occurred after that date. Enloe is entitled to judgment as a matter of law.

Finally, as an additional and alternative ground for dismissal, it appears that the defendants are entitled to qualified immunity as recognized by <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), and its progeny. Moreover, Director Ozmint and Warden McCall are entitled to immunity pursuant to the Eleventh Amendment.

## **CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motion for summary judgment be granted. Further, any pending motions should be dismissed as moot.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

October 22, 2009

15

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).